James Evans v. Secretary James LeBlanc In this over-detention case, Mr. Brian McNeal does two things that are pertinent to this appeal, and that bar the claims against Secretary LeBlanc moving forward. First, Mr. McNeal challenges the constitutionality of his confinement, and he does so without having sought or obtained any type of favorable termination by any federal or state court. Second, he brings claims against Secretary LeBlanc as a supervisor under a theory of supervisor liability for which Secretary LeBlanc is entitled for qualified immunity. I will address those two arguments in turn. First, I will address Heck v. Humphrey. I will first start by saying that, again, Mr. McNeal does challenge the constitutionality of his confinement. And I will go ahead and address what probably is the elephant in the room, and that is the Hicks opinion that just came out yesterday afternoon. And I want to specifically address in the Hicks opinion the idea that an over-detention case, well, that Heck v. Humphrey plays absolutely no role in an over-detention case. I believe that the panel yesterday in Hicks, that opinion referenced the fact that an over-detention case falls outside the, quote, the core of habeas. And I don't think that there's any support in either Prizer or its progeny or in the case which I think this panel remains bound by, Randall v. Johnson, which I will direct quote that says that Mr. Randall, because he seeks damages pursuant to 1983 for unconstitutional imprisonment and has not satisfied favorable termination of Heck, he is barred from any recovery. Are you saying we don't have to follow Hicks? I am saying you don't have to follow Hicks, Your Honor. But it's so new. It is so new. It just came out yesterday afternoon. No, I read it last night on my phone. I mean, really? I mean, it just came out. We've got to follow it. Well, it just came out. We don't follow it if it transgresses prior precedent. Okay. So you're saying there's an earlier precedent, so it was dead the moment it came out. Okay. I mean, I'll listen to that. Well, no, at least to the extent that it says that Heck has no bearing in an over-detention case, because Randall, which came out in 2000, make no mistake, it was an over-detention case. The plaintiff in Randall v. Johnson. I was going to say the panel in Hicks doesn't cite Randall. The Hicks panel does not cite Randall. And there's two issues with that omission, and I do think that it's a very significant omission. The first one, as I just mentioned, is that Randall is an over-detention case, and I think it's squarely. . . Well, I wondered about that when I was reading the magistrate judge opinion. He said Randall v. Johnson says Heck bars these cases, and two pages later he says this is not barred. And I thought, oh. So you explain it to me. I need to be. . . What year is Randall? I'm sorry? What year is Randall? 2000. I believe it's 2000. 2000, 2001. I think it's 2009. And it's not. . . You know, the other circuits apparently go the other way, but on the other hand, in the magistrate or district judge opinion, he cited a raft of cases that had said from throughout this circuit we can't consider over-detention pursuant to Randall, right? Bizarre. Well, I agree, Your Honor. Yes, I think Randall squarely controls this issue. And the other thing I wanted to bring up with respect to this. Well, why don't you tell the panel a little more about Randall just to elaborate? Yeah, sure. So in Randall, the plaintiff in Randall alleged that he did not receive certain credits that he thought that he was due. But significantly, because of the failure to give those credits, he says that he basically had to serve his sentence all over again. So in Randall, just like here, we had a plaintiff who says I have a release date, I was held past that release date, and I want money for every day that I was incarcerated past that release date. And so the fact that, again, that Randall found that Heck applied, I think, again, is positive. But Randall also does something else. And that is it does not address or does not rule on the concern that the Supreme Court had previously noted about the availability of habeas, right? Once you're released, if you can no longer seek habeas, then can you just move to 1983? And Randall says the answer to that is you still have to seek favorable termination. And yesterday in the Heck's opinion, the panel noted that, well, basically it was an equity argument, that habeas takes a while, state administrative remedies takes a while, and so it would be essentially unjust for us to make a prisoner go through those procedures before filing a 1983 suit. Come on, counsel. The opinion rests on more than equity. Come on, give me a break. Well, but that is part of it. I think one of the last paragraphs, it talks about the fact that you would have a number of prisoners who it would take too long. I mean, but I don't think that there was any legal citation for that particular. A lot of our opinions, they had a whole lot of gloss in them that don't have anything to do with the core issue, but it's kind of the spirit of the writer, but that doesn't detract from what the whole in the case is. Sure. I mean, you know, it says a whole lot more than that. Well, right. Well, and I think, but ultimately what it holds is that Heck does not apply to over-attention cases, and that is outside the spirit of Prysor because what Prysor talks about, it talks about the core of habeas, and that is when a prisoner wants to seek speedier release. Well, it goes back to the core notion that Heck is seeking to bar a claim where somebody's attacking the underlying basis upon which they're in prison in the first place, and the demarcation line being in over-detention cases, somebody's not attacking the basis on which they were there originally, but the basis of still being there after they're no longer supposed to be there. I mean, that's kind of the line of difference of thought that's there. Those issues were pushed up in Crittenden. They've been pushed up in a whole bunch of cases as a line of demarcation. I mean, I understand the Secretary's position, and you argue what you argue, but it's not like something in Heck that uses the words over-detention. Well, and I think it comes back to at the end of the day, Your Honor, if Mr. McNeil was currently incarcerated, if he was incarcerated today, his remedy would not be in 1983. Prysor tells us that. Heck tells us that. His remedy would be to follow the ORT procedure. It would be to file a federal habeas that says, right now I am at a Lane Hunt Correctional Center and I am being held without any legal authority. 1983 is not the procedural vehicle to attack that in the first instance, and that is the spirit of Prysor and its progeny that bars this suit. The Supreme Court explained the distinction between 1983 and habeas very recently in the Nance case, didn't it? I'm sorry? In the Nance case a couple of years ago, they reiterated that there is a distinction between 1983 and habeas. Absolutely. Habeas goes back 400 years. Technically it may even go back farther than that, but it's to get out of jail. It doesn't matter why you're being held. It's to get out of jail, and that's what the Supreme said in Prysor. Correct. A speedier release. That was the language that the Supreme Court used in Prysor, and that applies here. Regardless of whether— I think you made a mistake, though, in not attaching the judge's first dispositive ruling in this case, which is where he talked about Randall, and it's not in your record excerpts here. I saw it online last evening. Right. But that's where he talks about this long litany of cases that followed the Randall opinion up until recently. Up until recently. Yes. Of course, Louisiana's problems might have contributed to that failure. So aside from the hack argument, on the qualified immunity argument, how do you get around or can you get around Parker, which is a binding? Yes. The answer is yes. Parker is distinguishable. Well, and here's what's important about Parker, because Parker says that there's this broad pattern of over-detention that Secretary LeBlanc was aware of. We don't contest that piece of it. Parker is on—there is a motion for rehearing, but it's not—that hasn't been ruled on. But what Parker—Parker ends by saying that LeBlanc's conduct has not been analyzed, and so obviously for qualified immunity, deliberate indifference does not end with notice. It ends after you analyze how the secretary or how the state official actually responds to the problem. In Parker, on that record, there was no—there was no conduct analyzed. Parker says that that's how it ends. It says what he—his defense has not yet been stated. In this case, however, Secretary LeBlanc's conduct is stated in the Second Amendment complaint. Mr. McNeil alleges, starting in 2012, some of the actions that Secretary LeBlanc took in response to the general—the pattern of over-detention. So to answer your question, Judge Duncan, is Parker does not complete the analysis because Parker, on its own term, says we haven't analyzed the conduct. And here, there is conduct alleged. I thought—I mean, Parker was a sex offender, right? Correct. Classification, yes. So that was a classification error. Alleged, yes. Correct. The error here is different. The error here is different, yes. And, of course, one of the—in my opinion, one of the shortcomings of Parker and how it blends the over-detention, you know, why people—prisoners are over-detained is there's a number of reasons why that happens. And I think probably a lot better than some other cases, Brian McNeil is a good example of that because he was a probationer. He wasn't like Crittenden plaintiffs where you have someone with a gavel. Sometimes there's a different reason why somebody is over-detained. The determination turns on why they're over-detained, not the fact that they are over-detained, which isn't disputed that they're over-detained. So every case we get, we should look at why the person is over-detained, not the fact that they're over-detained. And each case is going to turn on those particular factors. Well, I think so, Judge. And the reason why is because, again, when you're looking at, for instance, Secretary LeBlanc and what he is—his notice of a problem, just saying that people were over-detained, that doesn't really tell him what the problem is. To what extent is this analogous to several cases that we have had coming out of Fort Worth where a person argued that there was municipal liability predicated on the fact that there were various instances of alleged excessive force on the part of the police officers. And they said there was a pattern, and we held no municipal liability because each of those events turned on its specific circumstances. Then you couldn't craft a policy from individual— why aren't these over-detention cases, at least as far as Secretary LeBlanc is concerned, precisely in that category unless you can put his fingerprints on a case? Well, no, I think I agree with that notion, and it's also what the Supreme Court found in Connick. And that was obviously a big argument in Parker. Of course, in Connick, Judge Duncan, as you know, of course— I don't remember that case. You may remember that. It dealt with, obviously, Brady evidence, Brady violations. There's a number of reasons why they occur. It could occur for reason A, B, or C. In here, Mr. McNeil, again, he's a rather unique over-detention. Some over-detentions are similar, like the Crittenden plaintiffs where you have when the gavel hits, you know, they're due to be released and we're waiting on paperwork. Then you have the Parker plaintiffs, like Parker, where you have a sex offender classification. But there's a number of reasons why it happens. So I do think it's important to look at that. Parker, how— It's a different reason. The core claim is a deprivation of liberty when somebody shouldn't be in there. So it matters that much whether they were originally charged as a sex offender or something else? For Secretary LeBlanc's purposes, I do think so, because we're looking at what he had notice of. And, of course, for qualified immunity, the test is did he have fair warning of a problem that he could respond to it? Suppose, for example, a lower official in the hierarchy deliberately did not give credit to someone. I believe that's Hicks, right? If they deliberately didn't do it, how in the world could Secretary LeBlanc be responsible for what a lower official did deliberately? That actually is conic. Right. And because there is no responding at superior liability, right? Right. Correct, yes. So I don't see how a lower official, if he did it deliberately, which the officials in Hicks did, I don't see how LeBlanc could be liable for that. And, as a matter of fact, Hicks doesn't hold that. LeBlanc is not a defendant in Hicks. That's correct. He was dismissed on qualified immunity grounds. And, yes, Your Honor, and I would just say that that is the danger of Parker, is that it does lead us down a road of essentially setting Secretary LeBlanc up for vicarious liability. We have to follow Parker. Correct. We're talking about whether it's distinguishable because of the kind of errors that led to the over-detention. Correct. I don't think Parker holds that merely because there's over-detention, Secretary LeBlanc has to get out his checkbook. I would agree, Your Honor. There is a danger of vicarious liability. My time is up. I reserve the remainder of my time. Thank you. Thank you. Mr. Most. Yes. Good morning, Your Honor. This is William Most for Brian McNeil. May it please the Court. Are you representing all the plaintiffs in these cases or are they just for my information? No, Your Honor. Some, yes. So we represent Mr. Hicks, Mr. McNeil. We represent Mr. Grant, Mr. Trawick. However, Mr. Taylor, which is going to be argued later today, is represented by the Institute for Justice. The Quinton and plaintiffs were represented by the MacArthur Justice Center. There is a lot of over-detention. Not all of it is my cases, but some of it is. Well, do you agree that the mere fact of over-detention, which, yes, violates the Constitution, there's it seems no doubt about it. The mere fact of over-detention does not mean that the secretary, the top of the pyramid, is personally liable under Section 1983. There has to be more than the mere fact of over-detention. Yes, I agree, Your Honor. And so the mere fact would not be enough to establish his liability. Otherwise, it would be responding as superior liability, which violates Monell and all 50,000 other cases. Right. But what you have here is you have a supervising official who was put on notice in 2012 that there was a range of over-detention that was causing about 2,200 people per year to be over-detained. What in 2012 put him on notice specifically about? It put him on notice of a range of problems. There was a 1,500-person backlog. There were delays between receiving paperwork from sheriffs. There were delays within the Department of Corrections that delayed people's release. And then in subsequent— And any of those problems— Those were the county jails, were they not? That's what Crittenden talked about, was the paperwork problem between the county jails and the DPSC, right? That was part of it, Your Honor, yes. Well, what else was it? Well, in Crittenden, the DOC did not have a system in place to— I don't mean Crittenden. I mean the 2012 report, because if the 2012 report—and I'm asking you because I haven't actually read it. I've read quite a bit about it. If that was talking about the paperwork problem between the county jailers and sheriffs and the DPSC, that's a completely different factual situation from what we have before us. However, that alerted Secretary LeBlanc to the overall problem of over-detention. No, it doesn't. Not any more than if you had an outbreak of flu in one unit of the prison and six months later you have another outbreak of flu somewhere else. Is Secretary LeBlanc liable for the sick guys in another part of the prison system? Of course not. Well, where I was going, Your Honor, is that subsequently in 2016 and 2017, Secretary LeBlanc was alerted specifically to the problem here of not knowing where inmates were, right? This is what happened in Crittenden. In Crittenden, the DOC was alerted that it had people in the system. It didn't know where they were. The 2017 Louisiana Legislative Auditor Report likewise told the— That's a very high level of generality, though. You can say that whenever someone is not detained, it's because you don't know where they were. Well, I would say there's no— I mean, there was no question that the Crittenden guys were sent off to that place for, I forget, Orleans Parish or the next parish. So they didn't know where they were. It's not accurate. It's that the paperwork wasn't moving properly. Well, all these problems flow from a common source, which is Secretary LeBlanc at no point made releasing people quickly and accurately a priority of his department. He did not put it into the strategic plan. Again, again, that's at a very—okay, go ahead. He, in fact, set a goal of 450 constitutional violations per year. I mean, I think by analogy— Do you really think that's a fair way of saying what the goal was? Wasn't it to reduce the number of overdetentions? Yes, reduce it to 450 per year of 31 days per overdetention. I mean, if you think by analogy— Deliberately overdetaining 450 people a year? Yes, I think when you set a goal that we are going to—that our goal is to have 450 violations per year, you are allowing—you are sending the message to your department that this is permissible. I mean, if you imagine you are the managing partner at a law firm, you find out your law firm has 2,000 serious ethical violations per year, and you as a managing partner don't say, we're going to stop this. You say, our goal is to have 450 ethical violations, serious ethical violations next year, and you don't put it into your strategic plan. You don't reprimand—you don't fire anyone. You don't reprimand anyone. But I didn't—was that in the magistrate judge's opinions here? It's in the complaint. It's alleged in the complaint. I don't recall whether it was in— I guess to—I mean, look, I understand the argument, and I understand what our precedents say. I also understand that this pattern requirement comes from Connick v. Thompson. If it were the fact in Connick that any time there was a Brady violation, the district attorney of New Orleans would be liable for it, Connick would have come out differently. There were all sorts of different kinds of Brady violations that could happen for various reasons, and the court required a very strict form of proof of a pattern that would put the DA on notice. And I don't understand why that same strict form of proof is needed to make Secretary LeBlanc liable for a specific overdetention in a particular case. I mean, look, your answer would be, well, Parker—I don't know. Parker decided to relax the pattern requirement? I suppose that's an answer. Well, I think, Your Honor, both—so Crittenden and Parker both, I think, recognized that there are multiple mechanisms by which people are overdetained in Secretary LeBlanc's department and that they flow from a common source, right, which is— In Crittenden, every one of those fellows had been in a parish jail, right? Everyone starts in a parish jail, yes, and then goes to a diocese. Well, I understand that, but they had all been overdetained because the parish jail didn't have the paperwork from the DPSC that, you know, time served or what time served. Yes, Your Honor, but what the court in Crittenden found was relevant to put the secretary on notice was the 2012 Lean Six Sigma allegations and Secretary LeBlanc's failure to make overdetention a priority for his department. So when you look at Parker and Crittenden, the common thing they have between them is that they look to the pattern. They look at Secretary LeBlanc's reaction. They see that he's not fixing the problem. Well, let me ask, why didn't someone file a class action? There is a class action, Your Honor. It's Humphrey v. LeBlanc. And what stage is that in? That's pending class certification in the Middle District, Louisiana. We have a hearing on the 27th of this month on class certification because as the parties learn more about the commonality between all these. Well, what I'm hearing is less about the commonality, frankly. I mean more about the fact that a lot of fellows were kept in longer than they should have been but less about the circumstances in any particular case. Well, I think that there are buckets of overdetention. So there is the Humphrey v. LeBlanc, for example, deals with the people who are eligible for release upon the date of their sentencing and are not released timely. Suppose the habeas remedy governs here because some of us, like Judge Oldham, believe that habeas is the exclusive remedy when you're being held in violation of the law, which is the common feature of all these claims. So if habeas is the exclusive remedy or the remedy, what is it that brings us outside of Prysor v. Rodriguez? Yeah, because what Prysor said is, quote, this is at page 494 of that opinion, if a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement. That's Prysor 411 U.S. at 494. Well, I understand that. But habeas would have been — why would habeas not have been a remedy for these people? Well, for some of them, they did attempt habeas to get out. In Crittenden, at least two of the plaintiffs filed habeas petitions. One of them discontinued them. One was granted within about 48 hours, if I recall correctly. That's right. Habeas is the remedy to get you out. Well, why wouldn't habeas — let's say you want to represent your plaintiffs in the most effective way. Now, leaving aside the ones who are already out of prison, but the ones who are in prison, wouldn't it be more worthwhile to set up a network or try to have a political setup on the outside and then be prepared to file habeas petitions immediately? They'll all go to the Middle District of Louisiana, won't they? I don't know, Your Honor. But for some people, they have filed habeas. For some people, we have filed habeas. And there are ways in which you can get very prompt relief from habeas, aren't there? In which case, the damages are minimized. Well, frankly, Your Honor, what we have found is more effective and faster is we send an email to the Department of Corrections, and then they quickly let people out once identified. The problem is the relief that this plaintiff and similar plaintiffs are seeking is not to get out. Mr. McNeil was out by the time he filed his lawsuit. He's not seeking— I understand that. But the availability, the point of dividing 1983 and habeas is that habeas is the historical remedy for detention outside the law. And 1983 is supposed to take place when, only when, the state remedies don't work. I understand that, Your Honor, and that was Judge Oldham's argument, but it was rejected in Nance v. Ward last year. So in Nance v. Ward, the court said there is this implicit exception to 1983 for actions that lie within the core of habeas corpus. In defining that core, this court has focused on whether a claim challenges the validity of a conviction or sentence, and then later it talks about damages suits. They do not go to the validity of a conviction or sentence and thus fall outside habeas' court. So the Supreme Court has given us the line, and the line is the line that Heck drew, which is where a case is challenging the validity of a conviction or sentence, you're barred by Heck, right? That's within the core of habeas. But here, my client in no way is challenging the validity of his conviction.  I understand. Thank you, Your Honor. Back to supervisory liability. Let me ask you a hypothetical. Suppose lower-level officials in the Louisiana Department of Public Safety and Corrections, not Secretary LeBlanc, deliberately decided not to honor time served in another state with respect to the release date, just said, no, we're not going to do it. Would Secretary LeBlanc be liable under Section 1983 for the deliberate conduct by the lower-level officials? Fortunately, Your Honor, that doesn't have to be a hypothetical. That's the facts of Hicks 1, the first Hicks opinion, and what the court said there is Secretary LeBlanc will not be liable for the deliberate over-detention. However, in the second part of that sentence, it says he can be liable for negligent over-detention, a pattern of negligent over-detention. Deliberate, no, and yes, you're right. You saw through my spoke screen, yes, that's Hicks. So in Hicks, the officials who deliberately did it yesterday were not granted qualified immunity, but LeBlanc was in the same case. So I guess my point is we have to look at the quality of what happened to result in the over-detention, the specific circumstances to figure out whether LeBlanc is sufficiently on notice so that he is personally liable. I think that's right, Your Honor, and I think the reason why is, of course, because he is a supervisor, right? The way Secretary LeBlanc affects his policy and choices is through policy documents like a strategic plan, like directing people to do training, like developing a training manual, things like that. It's hard to, as a supervisor, you cannot train people to not be just deliberately bad actors, right? What you can do is you can make it a priority that when people are identified to be released, they should be released quickly, immediately. That's not exactly specific enough. I mean, my policy manual could say people should be released on time, people should be released quickly. That might not settle the problem, for example, in this case. I think that's right, Your Honor. Which resulted in a very strange where someone is sent to an intermediate place en route to a rehabilitation facility, right? But then it was discovered, well, he doesn't actually qualify for it, and so there's this odd sort of mismatch in what happened. What policy, I mean, do you tell me what policy in the policy manual would have taken care of this particular problem?  Well, number one, which has come up in this court before, which is a policy that DOC employees must implement the Baudier case that says no matter what a court orders, you follow the order of the court unless it's overturned. And so in this case, that would have been following the court's instruction to send Mr. McNeil to the Steve Hoyle program where his release pick-up order was. Well, see, but that's the strange thing about it. It was discovered at Hunt that he wasn't qualified for the Hoyle program. No, Your Honor. The DOC decided that they thought he wasn't qualified. The judge had ordered that he go there. They could have gone back to the judge and asked the judge to change the order, but they didn't. Well, that's not material here, is it? No, I think it is, Your Honor, because I think the question— Then maybe that reinforces the idea that habeas was the remedy, because if the prison was acting contrary to the judgment, that's pretty bad. But let's pass that by because the point still is they find him ineligible and they move him somewhere else, and then the people there know that he's supposed to get out on a certain date, and they just screw around for another 30, 40 days. I mean, I think the other thing that Secretary LeBlanc could have had as his policy is we are going to follow VI statute 15566, which says that you keep the paperwork and the person together, that they travel around the system together. And you trust prisoners to travel with their own paperwork? No, I don't think they physically carry it, but the statute says that the documents are tendered with the prisoners. So you're saying that the policy manual should have said follow the statute that's already on the books? Yes, Secretary LeBlanc's department does not follow that statute. And also, I think, in addition to the policy, so when you think about effective supervision, you have policies and then you have accountability, right? It doesn't help if you have a written— You know what? All I looked, all I saw in this case, so I'm way behind things, the district judge's two opinions and the second one dealing with LeBlanc, and it doesn't say anything about is all of this in your pleadings or are you just telling us what you've generally learned from all the cases? Well, I think— Because all he says is there was the 2012 report, then there was the 2017 report, which is approximately the same time that this fellow was detained, and therefore he had to know. I mean, if you look to the complaint, which is, I think, what we have to look to, if you look at paragraph 62, Secretary LeBlanc did not set a goal of fixing the problem. Paragraph 63, he set the goal of over-detaining only 450 persons per year. And then subsequently, instead of fixing this problem, they adopted it into their policy, putting on their website a statement that it—this is paragraph 77— it can take up to 12 weeks to calculate a date and release someone. Paragraph 83 talks about the lack of any sort of formal training program prior to 2017, when Mr. McNeil was over-detained. Paragraph 109, Secretary LeBlanc did not initiate a single example of discipline or adverse employment activity for DOC employees who have incorrectly computed sentences or release dates from 2000 to the present. Is it your position that if the over-detention is a result of negligence somewhere in the system, then Secretary LeBlanc is liable under Section 1983? No, there's no respondeat superior for negligence. However, what the law is, is that when you have a supervisor who is put on notice of an exceptionally large, broad, and deep constitutional problem within his department, and his actions speak of deliberate indifference to that problem, he can be liable. And now, recall that we are at the 12 v. 6 stage. He's having trouble thinking of an over-detention that would occur because of some problem in the system, whether it is failure to forward paperwork, failure to follow a statute that keeps the paperwork with the inmate, or whatever the reason. I'm having trouble thinking of any kind of negligent action by lower-level officials that wouldn't, under this theory, result in supervisory liability for LeBlanc. Well, I can think of lots. For example, if he had a system where there's supervisors checking work, catching errors, and correcting them. If a low-level person made a mistake, and their supervisor caught and fixed it, and it resulted in short over-detention, I don't think that would result in liability. The problem here is that Secretary LeBlanc did not put into place the systems that would allow for mistakes to be made and caught, because mistakes are going to happen in any system. The question is, as a supervisor, have you set up a system that takes those mistakes seriously and makes best efforts to minimize their effect? And what we have is a consistent record here that at least alleges, because we're just at the allegation stage, alleges facts sufficient to make it plausible that Secretary LeBlanc acted with deliberate indifference. I guess you think you're on a roll here in the cases, and I don't say that disrespectfully. But your brief is woefully short on specifics. In fact, it has virtually almost no specifics about your complaint, other than Paragraph 59, Paragraphs 92 to 93, Paragraphs 61 to 63. It's the latter, which says, Secretary LeBlanc did not fix the problem or even set a goal of fixing the problem. And, you know, we're admittedly here on what motion to dismiss, and we will look at the complaint, but your briefing doesn't help us. Your Honor, my time is up. May I answer? Yeah, please. I mean, I think if you look at pages 27 to 28, we lay out in sharp form some of the pattern allegations and compare them to what was sufficient and critical and what we have much more here. So thank you for your time, Your Honor. All right. Thank you. Your Honor, when we left off and to your point, Judge Duncan, about the supervisor liability standard, we're here and we're analyzing deliberate indifference, and no area of deliberate indifference law tells an official that they have to fix the problem completely. It just says that you can't disregard it, and that's what Parker found, at least on that record where there was no conduct. But here, Your Honor, as counsel pointed out, there are, his response is alleged in this complaint. It's alleged that he set a goal of reducing the number of over-detained inmates, that he set a goal of reducing the number of days that over-detained inmates were actually over-detained. He alleges that the DPS&C created a case management system, which unfortunately failed, so they had to revert back to their other one. And by the time that Mr. McNeil entered custody, he had implemented a training program. So neither Crinton nor Parker tells us that that response is deliberate indifference. And so this is a 12B, this is a motion to dismiss arising out of a 12B6, but that response, at least some of the conduct is alleged here. So I would certainly ask that you all take a look at that. I did want to note that although not alleged in the complaint, and Judge Jones, to your point, actually Mr. McNeil did go back to court, and Judge Herman, the sentencing judge, was notified that he was held up at Elaine Hunt. So that's not in the complaint. It's technically not in this record, but I did want to make that clear. If we have to come back, you know, that certainly would be a part of this record. So. As your counsel obviously mentioned the Humphreys case, I assume you're familiar with it. Does it sort of collapse all of these claims in, you know, kind of one big giant pool to sort all these out in one case, if you're able to say?  As counsel mentioned, the classification is ongoing, and I do think that part of the issue with classification is going to be it's going to be breaking down why inmates are over-detained. I don't know that commonality I think is going to be a significant issue for class certification. So the answer to your question is we don't know yet. Although possible, we don't know. So to conclude my remarks, and unless anybody has any questions, I would just say that, yes, Mr. McNeil is asking this court to adopt a standard which essentially will adopt. I mean, it will make supervisory liability one of responding at superior. Did the Nance case resolve this question of habeas relief against your client? I do not think that it did, Your Honor. Why? Well, because as we talked about when I was up here originally, I mean, Nance talks about the distinction between habeas and 1983. It certainly has not overruled prizer in its discussion. I mean, the great writ, as they called it in the Hicks opinion yesterday. So that line between the relief that 1983 can grant and what habeas is available for, I don't think Nance has done that. And let me ask you one other thing. I know that in a case like the case that transpired as the Connick case, Thompson was eventually freed from prison, was he not, and got a monetary award. I'm sorry. Which case? If defendants are exonerated in Louisiana and released from prison, they can claim some kind of monetary recompense, can they not? They can, Your Honor. Yes, the wrongful conviction. Those are wrongful conviction. But does that apply to any of these types of cases? Well, it certainly could. I mean, I do think that that kind of rolls into the heck analysis and habeas relief. I mean, in order to get that compensation that you were just describing, you have to have been found, you have to have been exonerated. So that means you went to court, and a state court, maybe a federal court, has found that the conviction was erroneous or otherwise overturned it. So that's the interplay between the two. So the answer is it's possible. In this case, there is no dispute that Mr. McNeil did absolutely nothing. He did not seek habeas. Well, I understand that. And the other question here is would the administrative remedy process within the prison have availed these McNeil, for instance? It's certainly available. I think that, well, I mean, it's speculation because he didn't file an order, but it certainly could have been. Well, I understand. You know, it's your job to know if a person is being held beyond and they file a grievance, can't the grievance proceeding result in their immediate release? Absolutely. It sure could. Yes, Your Honor. Are there any of these cases in general where that has happened or where it has not happened? Yes. In fact, yes. There's at least one case I think is actually being argued this afternoon where the ORT procedure actually resulted in, well, not the ORT procedure itself, but the follow-up, the judicial review with the 19th JDC actually ended up leading to the release of that inmate. So, yes, it is certainly possible. And my time is up, so thank you all. All right.